UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-858-RGJ

ROBERT LESTER                                                                                            Plaintiff

v.

LOUISVILLE METRO GOVERNMENT,                                                              Defendants
et al.

\* \* \* \* \*
**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Lester alleges violations of state law and seeks relief under 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution against Defendants Louisville Metro Government ("Louisville Metro"), Louisville Metro Youth Detention Center ("LMYDC"), Romonte Dishman ("Dishman"), a staff member at LMYDC, Benguy Guerrier ("Guerrier"), a staff member at LMYDC, and Toni Rice ("Rice"), the Quality Assurance Director at LMYD. [DE 7]. Defendants Louisville Metro and LMYDC moved to dismiss the Amended Complaint. [DE 10]. Briefing is complete and the matter is ripe. [DE 13; DE 14]. For the reasons below, Defendants' Motion to Dismiss [DE 10] is **GRANTED IN PART AND DENIED IN PART**.

## I.     BACKGROUND

Plaintiff was incarcerated in LMYDC from April 2018 to November 2018. [DE 7 at 43]. While incarcerated, Plaintiff alleges that he was "subjected to a pattern of abuse, neglect and physical violence toward him" by LMYDC staff members. *Id.*  Plaintiff pinpoints three instances of "abuse, neglect, and physical violence." *Id.*

On April 20, 2018, Plaintiff was working in the computer lab. *Id.* When his computer stopped working, Plaintiff became upset. *Id.* In response, LMYDC staff members "dragged" him "to an area . . . [in the computer lab] . . . hidden from view of a nearby camera, where a staff member known only as Mr. O'Neal stomped on [his] head with his boot." *Id.* Plaintiff alleges that this "incident caused him to suffer abrasions, knots and bruising to his skull, cuts on his wrist and left index finger, and red marks and welts around his throat, and emotional distress." *Id.* He "exercised his only administrative remedy to address this abuse by filing a report with the Cabinet for Health and Family Services." *Id.*

On June 4, 2018, Plaintiff "engaged in a non-violent verbal altercation" with Guerrier. *Id.* After the altercation and as Plaintiff walked away, Guerrier "rushed at [him] and grabbed him by the throat and threw him into a wall, knocking over a chair, then threw [him] to the ground, kneed him in the face and later punched him in the face." *Id.* at 43-44. Plaintiff alleges that he tried to report this incident to the Cabinet for Health and Family Services, but that Rice prevented him from doing so until "'his bruises healed.'" *Id.*

Finally, on September 12, 2018, a LMYDC staff member named Mr. Queen "slammed" Plaintiff onto the "hard floor by a toilet." *Id.* at 45-46. Rice then "closed a door to the bathroom to obstruct the view of the incident." *Id.* at 46. After the alleged assault, Plaintiff had a "large welt behind his neck for several days." *Id.*

In November 2019, Plaintiff sued Defendants in Jefferson County Circuit Court. [DE 1-3]. Defendants removed the case [DE 1] to this Court and moved to dismiss [DE 4]. After Plaintiff amended his complaint [DE 7], Defendants Louisville Metro and LMYDC filed another motion to dismiss. [DE 10].

## II.     STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. DISCUSSION

**A.  Exhaustion of Administrative Remedies**

Defendants contend that because Plaintiff "failed to file a grievance relating to any of the alleged incidents in his Amended Complaint, he failed to exhaust his administrative remedies. As such, all of his claims must be dismissed pursuant to the Prison Litigation Reform Act and KRS 454.415." [DE 10-1 at 76]. Plaintiff disagrees, arguing that "plaintiffs are not required to exhaust state administrative remedies before bringing a § 1983 action" and, even if they are, Plaintiff satisfied the exhaustion requirement by attempting to file a grievance with the "appropriate authorities following his physical assault on June 4, 2018." [DE 13 at 119].

1.  Prison Litigation Reform Act ("PLRA")

The PLRA provides: "No action shall be brought with respect to prison conditions under 1983 of this title, or any other federal law, *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a)  (emphasis added).  The PLRA defines "prisoner" as "*any person incarcerated or detained in any facility* who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C.A. § 1997e(h)  (emphasis added).

According to the Amended Complaint, Plaintiff was not "incarcerated or detained" in LMYDC when he filed his action against Defendants in November 2019.[1] [DE 7 at 43 ("From

---

[1] Defendants claim that "[f]rom the time of the alleged rights violations through filing this action, Plaintiff was incarcerated." [DE 10-1 at 75]. However, as noted above and making all "reasonable inferences" in Plaintiff's favor, the Amended Complaint appears to contradict this assertion. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007)  ("In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff").

April 2018, until approximately November 8, 2018 Plaintiff, then a minor, was a resident" of LMYDC)]. Because he was not "incarcerated or detained," he was not a "prisoner" under the PLRA. The question[2] for the Court thus becomes: if Plaintiff was not a "prisoner," does the PLRA's exhaustion requirement apply to him? The Sixth Circuit has not addressed this issue, but "every federal court of appeals[3] that has addressed this issue has held that the PLRA's exhaustion requirement" does not apply to former inmates like Plaintiff. *See Burke v. Thompson*, No. 5:15-CV-00007-TBR, 2016 WL 2587996, at *10 (W.D. Ky. May 4, 2016) (quoting *Mabry v. Freeman*, 489 F. Supp. 2d 782, 785 (E.D. Mich. 2007) (internal quotation marks omitted) (finding PLRA exhaustion requirement does not apply to former inmate). These cases hold that the "language of the statute is plain and unambiguous—the exhaustion requirement applies only to 'prisoners.'" *Talamantes v. Leyva*, 575 F.3d 1021, 1023 (9th Cir. 2009). A person "not 'incarcerated or detained' in this manner at the time the action is filed is not a 'prisoner' for purposes of the statute, and therefore, not subject to the exhaustion requirement." *Id.* Based on the clear weight of authority, the Court finds that PLRA's exhaustion requirement does not apply to Plaintiff because he was not a "prisoner" when he filed his action.

2. KRS 454.415

KRS § 454.415(1) provides "[n]o action shall be brought by or on behalf of an inmate . . . until administrative remedies as set forth in the policies and procedures of the Department of Corrections, county jail, or other local or regional correctional facility are exhausted." The term

---

[2] Plaintiff did not raise this issue. Nonetheless, the Court considers it.
[3] *See Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999); *Ahmed v. Dragovich,* 297 F.3d 201, 210 (3d Cir.2002); *Michau v. Charleston County*, 434 F.3d 725, 727 (4th Cir.2006); *Janes v. Hernandez,* 215 F.3d 541, 543 (5th Cir.2000); *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir.1998); *Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir.2005); *Page v. Torrey,* 201 F.3d 1136, 1140 (9th Cir.2000); *Norton v. City of Marietta,* 432 F.3d 1145, 1150 (10th Cir.2005); *Harris v. Garner,* 216 F.3d 970, 979–80 (11th Cir.2000).

"inmate" is defined as "any person confined in either a state or federally operated facility, a county jail or other facility of local government, or in a private facility under contract with the Department of Corrections." KRS § 454.400.

Kentucky appellate courts have not considered whether the exhaustion requirement found in KRS § 454.415 applies to former inmates. Nor has the Sixth Circuit. But, in a well-reasoned opinion in this district, this Court stated:

> Neither party has cited a Kentucky case interpreting whether the exhaustion requirement found in KRS § 454.415 applies to former prisoners and this Court has been unable to find any such case. Therefore, the Court will interpret the language of KRS § 454.415 to determine whether it applies to claims brought by or on behalf of inmates who are no longer incarcerated. In doing so, the Court finds the statutory language of the PLRA to be analogous and case law interpreting the PLRA to be persuasive.
>
> . . .
>
> This Court finds this interpretation of the PLRA to be applicable to KRS § 454.415. An inmate is defined as "any person confined in either a state or federally operated facility." KRS § 454.400. Though it could have, it does not include any person who *was* confined. *Harris v. Garner*, 216 F.3d 970, 975 (11th Cir. 2000) ("It is confinement status at the time the lawsuit is 'brought, i.e., filed, that matters'") (collecting cases). The Court also finds the reasoning for why former prisoner are not required to exhaust administrative remedies under the PLRA to be applicable to KRS § 454.415. "To require former prisoners to initiate or pursue those internal, administrative remedies once they have left the confines of a facility is a strained application of § 1997e at best." *Smith v. Franklin Cty.*, 227 F. Supp. 2d 667, 676 (E.D. Ky. 2002).
>
> . . .
>
> Accordingly, the Court holds that KRS § 454.415 does not apply to actions brought by or on behalf of former inmates who are no longer incarcerated.

*Burke*, 2016 WL 2587996 at *10–11.

Based on this persuasive precedent, the Court finds that Plaintiff was not required to comply with the exhaustion requirement of KRS § 454.415 because he was not an "inmate" when he filed his action.

**B.    Claims Against Louisville Metro**

        1.    <u>State law claims—Sovereign Immunity</u>

Plaintiff asserts state law claims of battery, assault, intentional or negligent infliction of emotional distress, negligence, negligence per se, negligent hiring, negligent supervision and training, and malicious prosecution and abuse of process. [DE 7 at 46-50]. Defendants argue that "[w]hile it is difficult to tell exactly which of the state law claims are intended to be raised against the individual defendants and which are raised against Metro Government and/or LMYDC, all state law claims construed to be raised against Metro Government should be dismissed as Metro Government is entitled to sovereign immunity." [DE 10-1 at 71]. Plaintiff concedes that Louisville Metro "as a governmental agency" is entitled to "sovereign immunity," but argues that it is not entitled to "absolute sovereign immunity" because under KRS 65.2001 "local governments may be liable in tort." [DE 13 at 110-111].

The Court disagrees. Under Kentucky law, political subdivisions of the Commonwealth, including county governments, are entitled to sovereign immunity. *Yanero v. Davis*, 65 S.W.3d 510, 525 (Ky. 2001). The General Assembly addressed the immunity of such governments in KRS 67C.101(2)(e), providing that consolidated local governments, like Louisville Metro, "shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KRS 67C.101(2)(e); *see also Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 905, 907 (Ky. App. 2008) ("[Louisville] Metro Government is entitled to sovereign immunity"); *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132

(Ky. 2004) (finding Lexington-Fayette Urban County Government was immune from suit). Thus, absent an explicit statutory waiver, Louisville Metro is entitled to immunity. *Jewish Hosp. Healthcare Servs., Inc.*, 270 S.W.3d at 907.

The doctrine of sovereign immunity extends to tort claims. *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 677 (Ky. Ct. App. 1978) (citing *Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963); *All-Am. Movers, Inc. v. Kentucky ex rel. Hancock*, 552 S.W.2d 679 (Ky. Ct. App. 1977)). The Kentucky General Assembly has never expressly stated or otherwise suggested that it intended to waive sovereign immunity for tort claims against the government. Faced with such claims, courts have found that no waiver exists. *See, e.g.*, *Yanero*, 65 S.W.3d at 526 (noting that governmental subdivisions' immunity is grounded in the Kentucky Constitution and thus not waived); *Tinch v. Jefferson Cty. Pub. Sch. Sys.*, No. 3:12-CV-844-DJH, 2016 WL 1574149, at *4 (W.D. Ky. Apr. 19, 2016) (dismissing a defamation claim under Kentucky law because sovereign immunity had not been waived). Thus, Louisville Metro is entitled to sovereign immunity for Plaintiff's state-law claims. *See Albin v. Louisville Metro Gov't*, No. 3:19-CV-576-DJH, 2020 WL 1310495, at *3 (W.D. Ky. Mar. 19, 2020) (finding Louisville Metro entitled to sovereign immunity and dismissing state-law claims, including tort claims).

2. §1983 Claim

In his Amended Complaint, Plaintiff alleges that Louisville Metro is liable under §1983 because it caused "Plaintiff's harm" by: 1) "being deliberately indifferent in the training of its employees and staff"; 2) "ratifying the unconstitutional conduct by failing to properly investigate complaints of constitutional violations"; and 3) "permitting quality assurance director Toni Rice to adopt policies and procedures that prevented and concealed constitutional violations against Plaintiff which caused Plaintiff to suffer harm." [DE 7 at 51]. Defendants argue that Plaintiff's

§1983 claim against Louisville Metro must be dismissed because he has failed to sufficiently allege any of his theories of §1983 liability. [DE 10-1 at 75].

A plaintiff asserting a municipal liability claim under § 1983 must allege that the federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). To properly assert a municipal liability claim, a plaintiff must sufficiently allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694.

### a. Failure to Train

To state a failure-to-train claim, the plaintiff must allege: 1) "the training or supervision was inadequate for the tasks performed"; 2) "the inadequacy was the result of the municipality's deliberate indifference"; and 3) "the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: 1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or 2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir.2005); *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 409 (1997).

Plaintiff argues that he has sufficiently alleged his failure-to-train theory: "Plaintiff's complaint shows that Defendant Louisville Metro Government had ample opportunity to properly train its staff to follow the law, that even after the first incident, the staff failed to receive adequate training, and failed to refrain from using excessive, unwarranted and irrational force, as demonstrated by the videotape of June 4, 2018." [DE 13 at 118].

Defendants, on the other hand, contend that Plaintiff has failed to sufficiently allege his failure-to-train theory: "[I[t is unclear whether Plaintiff is attempting to raise a generalized failure to train or single incident failure to train claim. Plaintiff provided no examples of prior unconstitutional conduct, particularly conduct of which either the Assistant Director or Director of LMYDC were made aware prior to the incidents that are the subject of this Amended Complaint. Plaintiff alleged only that Metro Government was deliberately indifferent in its training." [DE 10-1 at 73].

Plaintiff has sufficiently stated a failure-to-train claim.  LMYDC is required to "adopt and enforce written policies and procedures which [l]imit the use of physical force to instances of self-protection, protection of the juveniles or others, prevention of property damage, prevention of escapes and in accordance with appropriate statutory authority.  In no event shall physical force be justifiable as punishment."  505 Ky. Admin. Regs. 2:060.  However, despite these "written policies and procedures," Plaintiff has alleged that LMYDC staff members violently assaulted him on multiple occasions.  Considering Plaintiff's factual allegations as true and making the "reasonable inference" that he was assaulted because the staff members were improperly trained, the Court finds that Plaintiff has provided enough allegations to "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; [*See* DE 7 at 41-46].  Plaintiff's

allegations may be insufficient after discovery. But, at this stage in the litigation, Plaintiff has alleged just enough for his failure-to-train claim to survive.

          *b.*     *Ratification*

Under a ratification theory, a single decision can constitute a municipal policy or custom "if that decision is made by an official who possesses final authority to establish municipal policy with respect to the action ordered, which means that his decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013) (internal citations and quotation marks omitted). An official with final decision making authority ratifies a subordinate's action if the decision maker provides "affirmative approval of a particular decision made by [the] subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir.1993). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "Thus the identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).

Plaintiff alleges that Rice "had final decision-making authority as it pertains" to: 1) "creating adequate policies and procedures to ensure staff and resident safety and to comply with state, local and federal regulations as well as juvenile detention facility procedures"; and 2) "investigating and remedying instances of alleged breaches of staff or resident safety or breaches of procedures, policies, or local, state and federal law." [DE 7 at 42]. Citing the LMYDC Resident Handbook [DE 10-2], Defendants argue that "[a]lthough Plaintiff erroneously alleged that Rice had final decision making authority and was permitted by Metro Government to 'adopt policies

and procedures that prevented and concealed constitutional violations against Plaintiff,' he pled no facts to support such conclusory allegations. Plaintiff did not identify a single policy or procedure that Rice allegedly adopted to conceal constitutional violations." [DE 10-1 at 74]. Plaintiff argues that "Ms. Rice's decisions in effect created Metro Government's policy and response to the unlawful harm he suffered initially during the attack against him and that this policy adopted and implemented under the direction of Quality Assurance Director Rice caused him deprivation of his constitutionally protected rights." [DE 13 at 114].

Plaintiff has sufficiently stated a ratification claim. Defendants have not cited any Kentucky authority for the proposition that the Quality Assurance Director of LMYDC does not have final decision-making authority. *See Pembaur*, 475 U.S. at 483 ("[W]hether an official had final policymaking authority is a question of state law"). Rather, Defendants rely exclusively on the LMYDC Resident Handbook: "Rice's position as quality assurance director was not one that either had final decision making authority or the ability to adopt polies and procedures for LMYDC. *See Louisville Metro Youth Detention Center Resident Handbook, page 5, attached as Exhibit 1*. It was the Assistant Director that had authority to establish policies and procedures and the Director that had final decision making authority within LMYDC." [DE 10-1 at 74].

Rule 12(d) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." While the LMYDC Resident Handbook may assist the Court on a motion for summary judgment, the Court declines to consider it now. Therefore, making all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that Rice had final decision-making authority and that she "affirmatively" approved the actions of the officers who assaulted him. [*See* DE 7 at 41-46]; *Feliciano*, 988 F.2d at 656.

### C.    Claims Against LMYDC

Defendants argue that "LMYDC is not a 'person' subject to suit under §1983 because municipal departments, such as jails, are not subject to suit under §1983 . . . Consequently, Plaintiff's claims against LMYDC should be dismissed for failure to state a claim for which relief may be granted." [DE 10-1 at 70-71].  Plaintiff does not disagree: "Plaintiff does not dispute the notion that Louisville Metro Youth Detention center is a branch of Metro Government and is not independent of Metro Government." [DE 13 at 110].

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish depravation of a federal right by a person acting under color of state law.  *Black v. Barberton Citizens Hosp.,* 134 F.3d 1265, 1267 (6th Cir.1998).  But LMYDC is not a legal entity amendable to suit under 42 U.S.C. § 1983 because it is not a "person" under § 1983.  *See Monell,* 436 U.S. at 688–90 (describing the meaning of "persons" under 42 U.S.C. § 1983).  As a result, LMYDC is neither a separate legal entity nor a "person" who can be sued under 42 U.S.C. § 1983.  *See Bush v. Carter Cnty. Det. Ctr.,* 2011 WL 3880468, at *1 n.1 (E.D.Ky. Aug. 29, 2011) (construing "the claims against Carter County Detention Center as against Carter County itself" because jails are not subject to suit under § 1983); *Shoemaker v. Greene County "Jail" Detention Ctr.,* No. 2:07–CV–124, 2007 WL 2159295, at * 1 (E.D.Tenn. July 26, 2007) ("The Greene County 'Jail' Detention Center is a building and not a 'person' who can be sued under § 1983.").  As a result, Plaintiff's claims against LMYDC are dismissed.

### IV.    CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1) Defendants' Motion to Dismiss the Complaint is **DENIED AS MOOT** [DE 4].

(2) Defendants' Motion to Dismiss the Amended Complaint is **GRANTED IN PART AND DENIED IN PART** [DE 10].

*Rebecca Grady Jennings, District Judge*
United States District Court

September 29, 2020

Copies to:   Counsel of record

14